JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ALONSO SANCHEZ,<br><br>       Plaintiff,<br><br>   v.<br><br>MAMA MANAGEMENT USA, LLC,<br><br>       Defendant. | Case No. 2:23-cv-4868-SB-AS<br><br><br>ORDER GRANTING MOTION TO REMAND [DKT. NO. 21] AND DENYING MOTION TO COMPEL ARBITRATION [DKT. NO. 22] AS MOOT |

Plaintiff Carlos Alonso Sanchez brought this putative class action in state court against his former employer, Defendant Mama Management USA, LLC, alleging a variety of wage and hour violations under California law. Defendant removed the case under the Class Action Fairness Act (CAFA). Currently before the Court are two motions: Plaintiff's motion to remand, Dkt. No. 21, and Defendant's motion to compel arbitration, Dkt. No. 22. Because Defendant has not met its burden to establish the required amount in controversy under CAFA, the Court grants the motion to remand and denies as moot the motion to compel arbitration.

I.

Plaintiff filed this case in California state court on March 29, 2023. Dkt No. 4 at 5 of 83. Plaintiff alleges claims for failure to (1) pay minimum wages, (2) pay overtime wages, (3) provide meal periods, (4) provide rest breaks, (5) reimburse business expenses, (6) provide accurate wage statements, (7) pay wages timely during employment, and (7) pay all wages due upon separation of employment, and for (8) violation of California's Unfair Competition Law. Plaintiff brings these claims on behalf of himself and a putative class of California citizens currently and formerly employed by Defendant.

1

Defendant removed the case under CAFA. Dkt. No. 1. In the Notice of Removal, Defendant alleges that the amount in controversy exceeded $5 million, including attorney's fees, based on assumptions that each putative class member had experienced three meal violations and three rest break violations per week and had worked two-and-a-half hours of unpaid overtime per week. Dkt. No. 1 at 4–9. Defendant alleges that it is a citizen of Delaware and New York. *Id.* at 10–12. Plaintiff moves to remand, challenging both assertions. Dkt. No. 21.

II.

CAFA generally establishes federal jurisdiction over class actions in which the amount in controversy exceeds $5 million and any member of the class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). A party removing a case under CAFA bears the burden to demonstrate federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Because Congress enacted CAFA to facilitate adjudication of certain class actions in federal court, however, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). CAFA requires a removing defendant to provide a "short and plain statement of the grounds for removal." *Id.*; 28 U.S.C. § 1446(a). The notice of removal "need include only a plausible allegation that the amount-in-controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.

After removal, a plaintiff can contest the propriety of federal jurisdiction under CAFA by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction," while "[a] factual attack contests the truth of the allegations themselves." *Id.* (cleaned up). When confronted with a facial attack, the court accepts the allegations as true, draws all reasonable inferences in the defendant's favor, and determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). In contrast, a factual attack requires the defendant to support its jurisdictional allegations with competent proof under the same evidentiary standard that applies at summary judgment. *Id.* After both sides have had a chance to submit evidence, the court must then determine whether the defendant has met its burden to establish federal jurisdiction by a preponderance of the evidence. *Harris*, 980 F.3d at 699.

Defendant argues that Plaintiff has raised only a facial challenge to the amount in controversy (although it also contends that it has produced sufficient evidence to survive a factual attack). Dkt. No. 31 at 10–11. Although Plaintiff did not produce evidence challenging the amount in controversy, he challenged the reasonableness of the assumptions underlying Defendant's calculations and argued that they were unsupported by evidence. This—under Ninth Circuit law—is a factual attack. *See Harris*, 980 F.3d at 700 ("[Plaintiff] did not introduce evidence outside the pleadings. A factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence."). In *Harris*, the plaintiff raised challenges very similar to those raised by Plaintiff here, arguing—without producing evidence of his own—that the defendant had not shown that all members of the class worked shifts long enough to qualify for meal and rest periods. The Ninth Circuit affirmed the district court's decision remanding the case, agreeing that the plaintiff's attack was factual and that the defendant therefore had the burden of producing evidence to support its jurisdictional allegations. *Id*. at 700–01. Here, too, Defendant bears the burden of showing by a preponderance of the evidence that the amount in controversy exceeds $5 million (and that the parties are minimally diverse) in response to Plaintiff's facial challenge.

### III.

In its notice of removal, Defendant calculated the amount in controversy as approximately $5,070,000—barely crossing the $5 million jurisdictional threshold. Dkt. No. 1 at 10. This calculation comprises the following: (1) $666,798.75 in damages on the claim for meal period violations; (2) $666,798.75 in damages on the claim for rest period violations; (3) $304,050 in statutory penalties on the claim for inaccurate wage statements; (4) $976,468.80 in waiting time penalties; (5) $608,100 in penalties for untimely payment of wages during employment, (6) $833,498 in unpaid overtime wages; and (7) $1,013,928.58 in attorney's fees, representing 25% of the sum of the first six figures.[1]

Defendant supported these calculations with the declaration of Diana De La Torre, its human resources director overseeing Defendant's California operations. Dkt. No. 3. De La Torre states that, based on her review of Defendant's records,

---

[1] Defendant miscalculated the attorney's fee figure by 11 cents, stating it as $1,013,928.69. This error, which Plaintiff repeatedly points out, is trivial (unlike the $600,000 calculation error in Plaintiff's reply brief, Dkt. No. 32 at 2).

3

Defendant employed at least 440 hourly, non-exempt individuals in California during the class period, and that those employees worked in excess of 12,477 workweeks in that period.  *Id*. ¶ 3.  De La Torre used the employees' actual pay rates to calculate the figures cited above.  Three of her calculations, however, are based on assumptions Plaintiff now challenges:  (1) for the meal period claim, she calculated $666,798.75 "in the event Plaintiff was able to prove three noncompliant meal breaks per week per employee"; (2) for the rest period claim, she calculated $666,798.75 "in the event Plaintiff was able to prove three noncompliant rest breaks per week per employee"; and (3) for the overtime claim, she calculated $833,498 "in the event Plaintiff was able to prove only two and one-half unpaid overtime hours per employee for each workweek."  *Id*. ¶¶ 4, 5, 9.  De La Torre did not explain the source of or reasoning behind these assumptions.

In his motion to remand, Plaintiff challenges the reasonableness of De La Torre's assumptions, pointing out that "Defendant has not provided any evidence of the number of shifts each class member generally works per week, let alone whether each class member worked at least 3 shifts that were long enough every single week to entitle him/her to a meal period" and contending that "[e]ven assuming each class member worked 5 shifts per week, and that each shift was long enough to entitle him/her to a meal period, Defendant's assumption [of a] rate of 60% is unreasonable and speculative."  Dkt. No. 21-1 at 4.  Plaintiff also argues that "there are no allegations in the complaint to support a 60% violation rate for meal periods . . . , and thus, Defendant's speculative calculations should be disregarded," and that "Defendant does not explain why it believes its assumption of 2.5 hours of unpaid overtime for every class member is reasonable."  *Id*. at 4–5.  In the face of this factual challenge, Defendant provides no new evidence, but simply relies on De La Torre's declaration, which it asserts is sufficient, and contends that Plaintiff has not justified his challenge.  Dkt. No. 31 at 15.

Defendant's attempt to shift the burden to Plaintiff to prove unreasonableness is unavailing.  A removing defendant may "rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, *as long as the reasoning and underlying assumptions are reasonable*." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022) (cleaned up; emphasis added).  "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them," and the removing party "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

4

Defendant has not identified any basis for its assumptions, baked into De La Torre's calculations, that each class member had on average three noncompliant rest breaks, three noncompliant meal breaks, and 2.5 unpaid hours of overtime each week. As Defendant correctly argues, "Plaintiff's Complaint provides no guidance regarding his alleged meal and rest period violation rate." Dkt. No. 31 at 11. Indeed, Plaintiff's allegations that "Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours . . . worked," for example, are equally consistent with an occasional violation every few months or daily violations. Dkt. No. 4 at 18 of 83. Cf. *Vilitchai v. Ametek Programmable Power, Inc.*, No. 15-CV-1957, 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017) ("Whereas the allegation that Defendants did not pay for *any* overtime would support a 100% violation rate, the allegation that they did not pay for *all* of it allows for the conclusion that Defendants paid for some of the overtime worked. In its calculation, Ametek assumes that each putative class member employed by Ametek worked one hour of unpaid overtime per week. It provides no support for this assumption. Because the assumption is 'pulled from thin air,' it is insufficient to support Ametek's amount in controversy calculation.").

Defendant's assumed violation rates—which conveniently bring the amount in controversy just over the $5 million threshold—appear to be "pulled from thin air," and Defendant has not met its burden to show they are reasonable. *Ibarra*, 775 F.3d at 1199. *See also Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) ("[W]ithout evidence to support this violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and little more than speculation and conjecture. A defendant's assumption of a violation rate sufficient to put the total amount in controversy over $5 million is not reasonable simply because the complaint does not specify a particular violation rate."). Defendant's failure to justify its assumptions is particularly striking because De La Torre evidently performed a close review of Defendant's records, identifying the specific employees in the class, their actual pay rates, and the exact number of weeks they worked during the class period. Defendant does not suggest that it lacked access to the information needed to explain the basis for its assumptions about class members' work schedules.

Defendant's failure is material. Even a 5% reduction in each of the challenged figures would bring Defendant's calculation of the amount in controversy below the $5 million threshold—apart from any of Plaintiff's other challenges, which the Court need not reach. Alternatively, reducing the violation rate from 60% to 50% on either the meal or rest period claims alone would

5

decrease the amount in controversy by $111,133.13, bringing it below $5 million, and Defendant has not even shown that a 50% violation rate is a reasonable assumption. Likewise, assuming two hours of unpaid overtime per employee per week instead of two and a half hours would decrease the amount in controversy by $166,699.60, enough by itself to deprive the Court of jurisdiction. And Defendant has shown no reasonable basis for assuming even two hours per week. Of course, if these amounts decrease, the attorney's fee figure derived from them would also decrease, bringing the amount in controversy even further below the CAFA threshold.

Although Defendant notes that it did not include all Plaintiff's causes of action in its calculations, it neither relies on those claims nor makes any attempt to quantify the damages or penalties as to those claims. Because it is Defendant's burden to establish jurisdiction, the Court will not speculate on what those claims might add to the amount in controversy. *See Toribio v. ITT Aerospace Controls LLC*, No. 19-CV-5430-GW, 2019 WL 4254935, at *4 (C.D. Cal. Sept. 5, 2019) (declining to "consider any amount-in-controversy figure for Plaintiff's fourth, fifth and seventh claims here because it is [the defendant's] burden to demonstrate that figure and it has not offered any figure in connection with those claims" (footnote omitted)).

In sum, Defendant has not met its burden to show by a preponderance of the evidence, based on reasonable assumptions, that the amount in controversy exceeds $5 million. The case must therefore be remanded.[2]

IV.

Because Defendant has not met its burden to establish federal jurisdiction, Plaintiff's motion to remand is GRANTED, and this case is REMANDED.

---

[2] Plaintiff also challenges the existence of diversity, arguing that Defendant is a California citizen as shown by its public filings that identify Defendant's principal office as being in California. Dkt. No. 21-2 at 5, 8 of 11. There is some doubt surrounding this issue. In its notice of removal, Defendant invoked the wrong legal standard for citizenship of a limited liability company under CAFA, and although it asserts and produces evidence that it is controlled by its sole member, which is located in New York, it has not unambiguously shown that Defendant's principal place of business is in New York. Dkt. No. 1 at 11. Because Defendant has not met its burden to show that the amount in controversy exceeds $5 million, the Court need not determine whether Defendant has established diversity.

Defendant's motion to compel arbitration is DENIED as moot without prejudice to Defendant seeking to compel arbitration in state court.


Date: August 18, 2023 _____
                                                                Stanley Blumenfeld, Jr.
                                              United States District Judge